UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARSHALL W. HENDERSON, | * | CIV 10-4116-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING PLAINTIFF'S MOTION |
| | * | TO APPOINT COUNSEL |
| DR. ROYCE ENGSTROM, | * | |
| DR. JAMES S. KORCUSKA, | * | |
| DR. FRANK MAIN, | * | |
| DR. GRACE A. MIMS, | * | |
| DR. KAREN OLMSTEAD, | * | |
| DR. SETH OLSON, | * | |
| DR. TAD PERRY, | * | |
| LINDA REETZ, | * | |
| DR. TERISA REMELIUS, | * | |
| and THE SCHOOL OF EDUCATION AT | * | |
| THE UNIVERSITY OF SOUTH | * | |
| DAKOTA, | * | |
| | * | |
| Defendants. | * | |

## I. Background

Plaintiff Marshall W. Henderson brought this action against the above-named Defendants by filing a 52-page pro se Complaint. (Doc. 1). Chief Judge Karen E. Schreier granted Henderson's motion to proceed in forma pauperis. (Doc. 5). Henderson filed a Request for Attorney (Doc. 47) seeking to have the Court appoint counsel for him. Chief Judge Schreier denied Henderson's motion for court-appointed counsel "without prejudice to refiling." (Doc. 55). Henderson in a filing dated July 14, 2011, again sought appointment of counsel from the Court. (Doc. 58). On August 30, 2011, Chief Judge Schreier reassigned the case to the undersigned judge. (Doc. 59). For the reasons explained, Henderson's motion for appointment of counsel is denied.

## II. Discussion

Henderson's Complaint contains a number of legal theories arising out of his extreme dissatisfaction in pursuing a graduate degree from The University of South Dakota. The claims include breach of contract, sexual harassment, civil rights claims, violation of the Americans with Disabilities Act, and breach of fiduciary duty, among others.

A civil litigant has no automatic right to appointed counsel. Slaughter v. City of Maplewood, 731 F.2d 587, 590 (8th Cir. 1984) (citation omitted). Rather, the decision to appoint counsel is left to the broad discretion of the district court. Id. at 589. In evaluating applications for the appointment of counsel in Title VII cases, courts generally consider: 1) the plaintiff's financial resources; 2) the plaintiff's efforts to secure counsel; and 3) the merits of the discrimination claim. Id. at 590. A court also should consider such factors as the legal and factual complexity of the plaintiff's case, the plaintiff's ability to present his claims, and whether the nature of the litigation is such that the plaintiff and the court would benefit from the assistance of counsel. See In re Lane, 801 F.2d 1040, 1043-44 (8th Cir. 1986); Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir. 1984).

### A. Plaintiff's Financial Resources

According to his motion to proceed in forma pauperis, Henderson earns $207.64 per week working for The Butler's Full Service Cleaning. Plaintiff had no other income and just $73.24 in cash, checking, and savings. (Doc. 3). Plaintiff is a man of modest means who likely cannot afford to hire an attorney other than on a contingent basis. See generally Caston v. Sears, Roebuck & Co., 556 F.2d 1305, 1309 (5th Cir. 1977) (explaining that a litigant need not be a "pauper" to qualify for appointed counsel under Title VII); Mitchell v. Champs Sports, 42 F.Supp. 2d 642, 649 (E.D. Tex. 1998) (noting that in a Title VII case, "[a] movant's ability to afford counsel is measured by a more lenient standard than that required for in forma pauperis status.") (citing Ivey v. Board of Regents, 673 F.2d 266 (9th Cir. 1982)).

### B. Plaintiff's Efforts to Secure Counsel

To satisfy the second Slaughter factor, a litigant must "make what can be considered a reasonably diligent effort under the circumstances to obtain counsel." Bradshaw v. Zoological Soc'y of San Diego, 662 F.2d 1301, 1319 (9th Cir. 1981); Jenkins v. Chemical Bank, 721 F.2d 876, 880 (2nd Cir. 1983) ("At a minimum, there must be evidence of a reasonably diligent effort under the circumstances.") (citation omitted). In his request for reconsideration of the denial of appointed counsel,

2

Henderson details his efforts to obtain counsel.  Henderson initially identified 158 attorneys, whittled that list down to 28 attorneys who appeared to hold themselves out as practicing in federal court, and contacted 27 of those attorneys.  Two of those attorneys were willing to represent Henderson, but both required retainers of at least $7,000.  (Doc. 58).  Henderson reportedly earns $15,000 per year.  Henderson has made an effort to hire counsel, although there certainly are more than just 28 attorneys in this area who can practice in federal court in civil cases.  Henderson's efforts distinguish this case from instances where appointed counsel was denied on this ground.  See generally Hale v. North Little Rock Hous. Auth., 720 F.2d 996, 998 (8th Cir. 1983) (district court did not abuse its discretion in denying motion to appoint counsel where plaintiff filed an affidavit from an attorney who refused to accept case on a contingency basis because, among other things, plaintiff "made almost no effort to retain counsel . . ."); McIntyre v. Michelin Tire Corp., 464 F.Supp. 1005, 1009-10 (D.S.C. 1978) (finding that plaintiff's attempt to obtain counsel fell "far short of the diligence that should be required" where plaintiff contacted only two attorneys and city telephone directory listed over 400 attorneys).

## C.  The Merits of Plaintiff's Case

At this early stage of the case, the Court has only Henderson's very lengthy Complaint from which to gauge the merits of the case, together with the recently filed Form 52 Report.  The Court can make no determination from those materials alone whether Henderson's claims are viable, although some of the legal theories appear not to be viable as a matter of law.

## D.  Complexity of Plaintiff's Case

Henderson's complaints stem from his termination from a graduate school program following his departure from an internship due to an alleged assault upon him and following problems he experienced in interactions with the individual named defendants.  The length of the Complaint belies that the case centers upon what happened to Henderson during a discrete time period while pursuing a graduate degree from The University of South Dakota.  The facts and legal claims in this case appear a bit tangled but not complex.

Plaintiff's filings in federal court reveal that Henderson understands the legal process and the nature of the claims asserted in his case. In short, the complexity of Henderson's case does not require the appointment of counsel. See Swackhamer v. Scott, 276 Fed. Appx. 544 (8th Cir. 2008) (unpublished) (affirming district court's denial of appointment of counsel where case was not complex and plaintiff with mental illness "demonstrated an ability to understand and present his claims.").

**E. Plaintiff's Ability to Present His Claims and the Benefit of Appointing Counsel**

The record in the present case demonstrates that Henderson is capable of proceeding without the benefit of appointed counsel. Henderson's Complaint is well-written, adequate in form, and identifies the claims Henderson is asserting. See Edgington v. Missouri Dep't of Corrs., 52 F.3d 777, 780 (1995) (affirming denial of appointment of counsel where case was not complex and plaintiff's well-written pleadings indicated his basic ability to state claims) abrogated on other grounds by Doe v. Cassel, 403 F.3d 986, 989 (8th Cir. 2005); Toler v. New, 989 F.2d 505 (8th Cir. 1993) (unpublished) (not an abuse of discretion to deny motion to appoint counsel where legal issues were not complex and plaintiff exhibited an ability to present his claims). Henderson was able to file a motion to proceed in forma pauperis and two separate requests for appointment of counsel. While these motions do not automatically establish Henderson's ability to represent himself, they nevertheless indicate Henderson's ability to navigate the legal process and communicate with the Court in a meaningful fashion.

**F. Conclusion**

Henderson has shown that he is unable to afford counsel and has made a good faith attempt to obtain an attorney. These facts, however, are not enough to tip the balance in favor of appointing counsel in this particular case. See Dalal v. Kaiser Permanente, No. 95-55223, 1996 WL 338361, at *2-3 (9th Cir. June 18, 1996) (affirming the district court's denial of motion to appoint counsel because plaintiff's case lacked merit even though plaintiff had submitted evidence of her poverty and had attempted to secure counsel); Ivey, 673 F.2d at 269 (concluding that plaintiff "clearly satisfied the financial requisites to appointment of counsel" but affirming district court's denial of motion to appoint

counsel because the case lacked merit); <u>Chen v. Sec'y of Agric.</u>, Civ. A. No. 87-2034, 1988 WL 30742, at *1-3 (D.D.C. March 21, 1988) (denying plaintiff's motion to appoint counsel because his claim lacked merit even though plaintiff had demonstrated that he was unable to afford counsel and had conducted a diligent search for an attorney). This case is not complicated, and Henderson appears able to adequately represent his claims to the Court. <u>See</u> <u>Hale</u>, 720 F.2d at 996 (district court did not abuse its discretion in denying motion to appoint counsel where plaintiff "made almost no effort to retain counsel and the issues presented were neither complex nor facially meritorious."). Accordingly, it is hereby

ORDERED that Plaintiff's second request to appoint counsel (Doc. 58) is denied.

Dated October 14, 2011

BY THE COURT:

/s/ *Roberto A. Lange*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE